THIS was an action on the case by Thomas M. Ogle against the Philadelphia, Wilmington and Baltimore Railroad Company, to recover damages for injuries sustained by him in his person, his horse, carriage and harness in the overturning of his carriage while driving over the railroad track and embankment of the company across Washington Avenue in the town of New Castle, in the night time, in December, 1863, in consequence of cars left standing on their railroad track within the limits of the avenue, and so near the railroad crossing in it as to leave scarcely room for a horse and carriage to pass them on the crossing, and by which the horse was frightened and shying from them, overset his carriage down the embankment, threw him out upon the frozen ground, slitting one of his ears an inch in length and otherwise severely bruising and hurting him, and then running away with the carriage and damaging both that and the harness and himself to the amount of one hundred dollars. The company was at the time engaged in lowering the grade of the railroad at New Castle, which intercepted all travel to and from the town by the Hare's Corner's road, and the plaintiff, as well as others residing upon it were consequently obliged to drive in and out of the town by Washington Avenue and over the railroad crossing in question. The avenue is eighty feet wide, but is crossed at that place by a railroad embankment several feet above the level of it, with a carriage way twenty feet in width raised in the middle of the avenue on either side of the embankment and constructed by the company for the passage of vehicles across the railroad. Empty cars were frequently left standing both by day and night, upon a portion of the avenue, and some time nearly up to the road crossing referred to. The railroad had been originally located and constructed under the charter of the New Castle and Frenchtown Turnpike and Railroad Company in the same place several years before Washington Avenue had been opened as a public street or highway by Messrs. Tasker and Shaw, the proprietors of the land on which it had been laid out, and it now appeared that *Page 269 
the railroad company under the legal titles which it had taken at the time of constructing the railroad, was seized in fee of the land at that, as well as other points upon it, to the width of the road, and was so seized in fee of it when the avenue was opened.
Booth, for the plaintiff. It was incumbent upon the plaintiff to show that the place where the injury occurred was a public street or common highway, and that he was rightfully traveling upon it at the time referred to, and that the defendant wrongfully obstructed it, in consequence of which he sustained the injuries complained of in the action. It had been proved that Washington Avenue was opened by Messrs. Tasker and Shaw, the proprietors of the land, in 1857 or 1858, as a street for the public use, and thereby dedicated it to the public use as a common highway, since which time it had been used and enjoyed as such by all persons who had occasion, or chose to use it. And such being the case, the railroad company had no right to leave their cars standing on the avenue, or within the limits of it, or any portion of it. The testimony of some of the witnesses was that they had seen their cars standing on the avenue projecting as much as twelve or fifteen feet over the line of it and into the avenue; whilst others testified that they had seen them standing there and projecting into it, to near the middle of it, it being eighty feet in width, and so close upon the carriage way as to cause horses to shy in passing them. As to what would constitute a dedication of private property to public use, it had been decided that if a street has been used by the public four or five years as a highway with the consent of the owners of the soil, the jury may presume a dedication of it by them. 4 Law Libr. 10 Jarvis v.Dean, 13 E. C. L. R. 45. And it has been held that the same may be presumed in this country after a public use of six or seven years. Barclay et al. v. Howell's Lessee, 6 Pet. 498. And a dedication by the owner of the soil for one year, will give the public a right to use it as a highway. 4 Law Libr. 10, 11. *Page 270 
What will constitute such a dedication, and what will negative the idea and intention of the owner of the soil to make such a dedication of it, might be found very fully reported in the case of Johnson v.Stayton, 5 Harr. 448, from which it would be seen that where the owner opened the road without any obstruction to travel retained by him upon the road, it would constitute a dedication of it as a common highway to the use of the public.
Harrington, for the defendant. The plaintiff was bound to show that the injuries sustained by him were the direct result and necessary consequence of the negligence and misconduct of the company, or its servants, in leaving the cars standing in the place and position complained of, and also that it was not attributable in part, or in any degree, to his own carelessness or negligence; for it would become the duty of the jury to consider whether the plaintiff under the circumstances, passing the cars at night, exercised proper care and prudence, and due diligence and precaution to prevent the accident by the shying of his horse and over-turning his carriage down the embankment; because, if with proper care and prudence on his part he could have avoided the accident, notwithstanding it might at the same time have been an act of imprudence on the part of the servants of the company to leave the cars standing in such a position, he could not recover. 24 E. C. L. R. 612. 4 Harr.
443, 483, 233, 320. Ang. on Highw. 271. 11 East 60.Pierce on Am. R. Law 272. 12 Metc. 415. What would constitute negligence in such a case, was a question for the decision of the court, but whether there was such negligence in the case, was a question of fact to be decided by the jury. 4 Harr. 254, 320.Redf. on Railw. 394. 1 Amer. Railw. Cases, 420. Washington Avenue never was a public road, street, or highway. The statute provides how public roads are to be made. Rev. Code
169. The dedication of private property to public use, is of common law origin, and was an appropriation of land to some public use by the owner of it, and accepted for such use by or on behalf of *Page 271 
the public. Ang. on Highw. 104. But it was in proof in the case that the authorities of the town of New Castle had refused to accept it as one of the streets of the town, and in consequence of it, that the proprietors of the soil reserve to themselves the right and privilege of closing is again at their will and pleasure. And if that was so, then it never had been dedicated to the public use in its proper legal sense, and was, therefore, not even yet a public street or common highway, for such a reservation of a private right and power at any time to enclose it again and vacate it as a common highway, was inconsistent with, and defeated its dedication to the public. Ang.on Highw. 111 sec. 139. Where a road was laid out to be used by certain persons only, but had in fact been used by the public generally for a long time, it was held by the court not to be sufficient evidence of a dedication of it to the public; and if there was no evidence that the parish had acquiesced in the dedication, it was not a public road which the parish was bound to repair. 6 E. C.L. R. 482. A dedication was insufficient without acceptance of it by the public. 37 Law Libr. 92. 2 Greenl. Ev. sec.
662. 5 Harr. 448. 4 Harr. 518.
Booth, in reply. It was immaterial whether that portion of the avenue within the located lines of the railroad was, or was not, vested absolutely and in fee in the company as the absolute owner of the land, for it was none the less bound to respect the rights of the public to the use of the avenue as a common highway, and to retrain from encroaching upon and obstructing it where it crossed the railroad. And even if the company was so seized of the soil and land itself, by constructing and keeping up a crossing over the railroad at that point on the avenue, the company had waived any right which if might previously have had to impede or obstruct the use of it by the public.
that if it was purely an accident without the imputation of any negligence to the company or its servants in leaving *Page 272 
the cars standing so near the crossing, the plaintiff would not be entitled to recover. Or if there was good ground for attributing it to negligence, yet if it was attributable either wholly, or in part, to the negligence of the plaintiff himself, he could not recover; for if the jury should be of opinion from the evidence before them that the accident and its results to the plaintiff, were in any degree attributable to his own negligence on the occasion, and that at the same time and in conjunction with it, it was attributable in part to the negligence of the company or its servants in leaving the cars standing in the position complained of by the plaintiff, inasmuch as it would be impracticable for them to weigh and determine the relative or comparative degrees of negligence and culpability attaching to each of the parties in such a case, or to ascertain the exact extent to which either of them was responsible for it, it would be their duty under such circumstances to return a verdict for the defendant.
As to the question of fact which had been so much discussed in the argument of counsel, whether Washington Avenue was a public street or common highway, and had been dedicated to the public use as such before that time by the proprietors of the land through which it had been laid out and opened by them for that purpose, it was only necessary for the court to say for the instruction of the jury in regard to the dedication of land by the owner of it to the public for such a purpose, it may be done without any formality whatever, and may be made with or without any writing, by any act of the owner, such as laying out a road upon it and throwing it open to public travel, or by platting and selling lots bounded by streets designated on the plat thereby indicating a clear intention to dedicate such roads or streets to the use of the public as common highways. So the owner's acquiescence in the use of his land as a public highway, or his declared assent to such use, will be sufficient, the dedication being proved in most, if not in all cases, by matter in pais as it is termed, and not by deed. The vital principle of dedication is the intention to *Page 273 
dedicate, and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, is made. Time, therefore, though often a material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. It is not like a grant, presumed from the length of time; for if the act of dedication be unequivocal, it may take place immediately. For instance, if a man builds a double row of houses, opening into an ancient street at each end of it, makes a street between them and between the two streets, and sells or rents the houses, that is instantly a public highway. If it is accepted and used by the public in the manner intended, the dedication is complete, and it will preclude the owner and all claiming in his right from asserting any ownership inconsistent with such use. Dedication is therefore a conclusion of fact to be drawn by the jury from the circumstances of each particular case, the sole question as against the owner of the soil being, whether there is sufficient evidence of an intention on his part to dedicate the land to the public as a highway. If, therefore, the jury is satisfied from the evidence that in 1857 or 1858, or any time prior to the occurrence in question, Messrs. Tasker and Shaw had opened Washington Avenue as a public street for public use over their land, and that the public was in the habit of using it as such, that would constitute it a public street or common highway, and in law a dedication of it as suchby them. But, in our judgment, there is a grave question underlying the question of dedication by Messrs. Tasker Shaw. They could undoubtedly dedicate their own land to the use of the public, as a common and public highway. But they could not dedicate the lands of other persons — they could not dedicate the lands of the railroad company to such use — nor could they by the dedication of their own lands, in any way impair or interfere in any way with any of the rights of the railroad, company within the lines of that road, under their charter, — whether to the soil, or the right of way, to hold, occupy and enjoy the same.
This court is bound to take notice of the public statutes *Page 274 
of the state. It appears that many years ago, as early as 1809, the legislature in its wisdom saw fit to incorporate a company, called the New Castle and Frenchtown Railroad Company, with authority to locate, lay out and make an artificial road from the town of New Castle to the Maryland line in the direction of Frenchtown in said state of Maryland. The work was attended with embarrassment and delay, and the legislature, from time to time, for the purpose of promoting the accomplishment of the object contemplated by the charter, passed a series of supplemental laws, changing, among other things, the name of the corporation to the New Castle and Frenchtown Turnpike and Railroad Company, with authority to construct a railroad; which legislation, culminated at length, in the year 1831 in the Act entitled "An act concerning the New Castle and Frenchtown Turnpike and Railroad Company," — to be found in the eighth volume, Delaware Laws.
By this act the route or location of the New Castle and Frenchtown railroad, as laid out and adopted by the Company, is confirmed and established as the proper route and location of the railroad. The company were authorized to enter upon and occupy the lands within the boundaries of the railroad, for the purpose of making the same; subject, however, to the liability to pay a fair and reasonable compensation (if demanded) by way of damages — such damages to be ascertained in the manner prescribed by the act. And by the 3rd section it is enacted that when judgment of confirmation upon any report made and entered pursuant to the act, then, the railroad, paying the damages assessed, or bringing them into Court, and paying the costs, "shall have and hold to them and their successors and assigns forever, all and every the lands described in such report, as fully and effectually as if the same had been well and sufficiently granted to them by the several and respective owners thereof, by any legal and perfect mode of conveyance or assurance whatsoever." By the 4th section of the act — after reciting, (in substance) that in many cases the New Castle and Frenchtown Turnpike *Page 275 
and Railroad Company were entitled by gift or private contract, to deeds of conveyance, for land through which the railroad is located, and in other cases, by the award of arbitrators, deeds of conveyance were to be executed to the company for certain other lands through which the railroad is located; and that the drafting and execution c. of so many deeds for so many small parcels of land will be attended with great trouble c., it is enacted, and the company are thereby authorized, instead of such deeds, to obtain from the parties, certificates containing an acknowledgment of the receipt of the consideration money, (if any), or the damages awarded (if any), and a description of the lands of the party within the boundaries of the railroad, with a declaration that the party conveys all his or her right and title to the lands so described, unto the company their successors and assigns forever. And the said section further enacts that the certificate when so executed shall vest in the Company and their successors and assigns forever "all the estate, right, title, and interest of the party or parties making it, in and to the lands therein described, as fully and effectually as if the same were well and sufficiently granted by such party or parties, by any perfect and legal mode of conveyance or assurance whatsoever."
The terms which the General Assembly has used in regard to the lands and the interest in the same, which the company was to take, are as expressive of their meaning and as comprehensive in their scope as any that could well have been adopted. Well, then, gentlemen, after the lapse of more than thirty years, during all which time the company has been in the undisputed and uninterrupted possession and occupancy of these lands, and has used them for all the purposes of their railroad, it is to be presumed in the absence of evidence to the contrary, that all the requirements of the statute, have been fully complied with, and that the lands are vested in the company in fee simple. But even if they were not the owners of the soil they had an undoubted right of way over the lands within the *Page 276 
boundaries of their road, so that, it is not very material, so far as concerns this case, whether they were the actual owners of the fee or not.
It has been stated by Mr. Gray that the defendants operate all these roads. It has also been stated by Mr. Gray and other witnesses that the old track of the New Castle and Frenchtown Railroad ran directly on to the old depot at the river, — that after the new station house was built, but before the happening of the injury to the plaintiff, the Company laid down a new track curving to the left and running to the new station, — that the old track remained as it was, clear across what is called Washington Avenue, and that the curve or new track commenced eastward and beyond the Avenue, and that prior to the making of the curve there was a sideling extending clear across the Avenue, with a switch at each end, to Connect with the main track, and that the old track eastward of the Avenue was taken up and a part of the sideling removed, leaving, however, a portion of the sideling extending from the westerly side some distance into the Avenue.
It is also in evidence before you that in consequence of the curve, it became necessary to raise the grade of the bed of the old track of the New Castle and Frenchtown Railroad, in order to accommodate it to the curve, and that the Company caused a space of 18 or 20 feet in width on each side of the railroad, and within the lines of the Avenue, to be graded up to the height of the track, as a crossing, which crossing was used by persons passing or traveling along the Avenue, and has been so used since the Fall of 1863.
I repeat to you, that Messrs. Tasker Shaw could dedicate their own lands to the use of the public as a common highway, but could not dedicate the lands of other persons, nor could they in any respect impair the rights of the company, either to the land, or their right of way over the land. And I now say to you, that under the circumstances any use of the crossing by persons passing or traveling along the Avenue, must be taken to be subordinate, or subject *Page 277 
to the paramount right of the Company to hold, occupy and use the railroad and its sideling, and the lands within the boundaries of their road.
If, therefore, you shall be satisfied from the evidence that the cars were standing on the sideling mentioned, and within the boundaries of the New Castle and Frenchtown Turnpike and Railroad, although they may have been within the lines of what is called Washington Avenue, your verdict should be for the defendants, for the reason that the company had a right to place and leave them Standing there, whether they were to be considered the owners of the soil or the owners of the road, and the right of way, as the case may be.
But if, on the other hand, you shall be satisfied from the evidence, that the cars were standing on lands belonging to Messrs. Tasker Shaw, which they had a right to dedicate, and which they did, in fact, dedicate to the use of the public as a common highway, and which had been accepted and used by the public as a common highway, then your verdict should be for the plaintiff, and his damages should be commensurate with the injury sustained by him in his person, and to his carriage, his horse and his harness.